ELLIS, Judge.
The defendant has appealed from the judgment of the Family Court in and for the Parish of East Baton Rouge, in which the plaintiff was granted a separation “a mensa et thoro” and the permanent care, custody and control of the minor child, Mark Lane, subject to the right of reasonable visitation by the defendant and an award of alimony pendente lite, the sum of $100.00 per month, and maintenance and support for the minor child, Mark Lane, the sum of $50.00 per month, payable in the amounts of $75.00 the first and 15th day of each month, the first payment being due and payable on the 15th day of August, 1963.
The plaintiff was denied attorney’s fees and the cost of the Court were decreed to be borne equally by the plaintiff and defendant.
The plaintiff’s suit was filed in August, 1962 and her main complaints were set forth in Article 4 of her petition as follows:
“(a) Mentally abusing and embarrassing your petitioner on many occasions and specifically on June 16, 1962, at the matrimonial domicile at which time defendant told petitioner to ‘g'et out and don’t come back.’
*683 “(b) Embarrassing and ridiculing your petitioner on many occasions and in particular in front of their daughter on June 16, 1962, by cursing and screaming at your petition.
“(c) Threatening your petitioner by warning her that she would not receive any support or subsistence from defendant if she left.
“(d) Refusing to allow petitioner and her children to have sufficient money for their maintenance in accordance with his ability to support them.
“(e) Striking your petitioner and causing her to need medical treatment as a result of his cruel actions.
“(f) Mentally harrassing your petitioner by his over-bearing ways and mannerisms and his cruel attitude toward petitioner and the children of the marriage, including having his son arrested and incarcerated in jail for 3 days without justification.”
The lower court, after a long trial and much testimony, concluded that both of the parties were guilty of fault but then applied the Louisiana rule, as well stated in Eals v. Swan, 221 La. 329, 59 So.2d 409, 410, wherein the Court stated:
“The Louisiana rule is that while mutual, equal fault operates as a bar to relief being given to either litigant, the courts consider in each case the degree of guilt, and only where there is a finding of fact that the degree of guilt has been equal is the suit dismissed. The rule of comparative rectitude has been impliedly recognized. Each case, however, stands on its own particular set of facts.” (Emphasis added.)
The court then considered the “degree of guilt” and in his reasons dictated in the record stated, “After very deliberate and careful consideration we find the fault of the husband outweighs the fault of the wife; * * After carefully perusing the over 400 pages in this record we are of the opinion that the defendant is at fault and that although it is true that on occasions the wife was guilty of cursing and bemeaning the defendant, such action on her part was brought about by years of silent and active abuse by the defendant. ( These parties were married in 1938 and four children were born, namely; Eric, aged 24; Carson, aged 22; Ruth, aged 20, who is emancipated by marriage prior to the filing of this suit, and Mark, aged 8. In 1954 the plaintiff filed suit for separation against the defendant and was granted such a judgment by the 19th Judicial District Court, in and for the Parish of East Baton Rouge, State of Louisiana in Suit No. 51,703 on the docket of the Court, and as a result the community of acquets and gains was terminated and has never been reestablished. It is clear from the record that plaintiff because of her children came back to the matrimonial domicile and did all in her power to make a home for the children. She obtained a position and from this not only maintained herself but bought clothes for the children. The plaintiff washed the family clothes, cooked, canned vegetables, bought and paid for her own automobile and maintained it. She also purchased electric blankets and other conveniences, which were badly needed in the home as it had only one fireplace and an electric heater in the bathroom. None of the bedrooms had any heat in them. In short, we believe that the plaintiff made a valiant effort and finally became discouraged and at times allowed her temper and feelings toward the defendant to get the better of her.
We do not believe any detailed discussion of the lengthy testimony in this case would serve any useful purpose and we are in full accord with the main findings of fact as dictated into the record by the District Court and we will take the liberty of quoting such portion with approval:
“ * * * The fault on the part of the husband is his attitude with respect to money and finances and the manner in which he has for the past number of years conducted *684 the financial arrangement of the family and more particularly conducted his own financial affairs. By his own admission the children found it difficult to discuss money matters with him which he blames on the wife but the fact remains that the children did and as he stated they felt it a crime to ask him for money. We also find that he was guilty of fault because we do not believe and we think the evidence supports it that he treated either his wife or his children with the fatherly respect that was due them. This is of long standing. By his own admission he had lost the love of his 3 older children and it was for that reason — -it was a major reason why he wanted the custody of his minor child, Mark. We find also that the defendant husband prevailed himself of certain luxuries not to the detriment of his family, because he could have provided other luxuries for his family, but in sort of, in our appreciation of the evidence, of a self-centered manner, namely: the airplane. It was a hobby. He could afford it but he did this and failed to in our opinion, provide other luxuries and necessities to his family. We find that his attitude and conduct towards his wife also to be unreasonable. The couple separated some 8 or 9 years ago and there was a judicial separation between them and there was a property settlement. Shortly thereafter there was a reconciliation and from that day forward they have not only maintained separate property, they have maintained just about everything separately except the roof, including separate bed rooms,
“When the wife worked and earned three to four hundred dollars a month we can understand why the husband could assume that she had enough for her maintenance and support, but when she no longer earned three to four hundred dollars a month but only a hundred dollars a month, and during that period of time attended L.S.U., the defendant made no different arrangement with respect to his wife. She continued in •our opinion to have to fend for herself and also on one or two other occasions with respect to the needs of the daughter.
“Now with respect to his having his son incarcerated. We say incarcerated, that is the expression used in the petition. Actually the father had a series of altercations with the son which ended up by having the son picked up for observation by the Parish Coroner. Frankly we do not believe that the father in this case was unreasonable. We believe that the son encouraged his father or dared his father to pick a fight. He came home intoxicated on several occasions subsequent to his release from the Army in May of 1962. He fired a pistol at the ground at the feet of his father. He made certain other threats and statement to his father and we can fairly say that during the latter part of May or June of 1962 the son had utter disrespect and contempt for his father and to the extent that we feel that his father having him picked up by the Coroner for examination was probably the thing to do.
“We have one other thing we want to discuss about the husband. We do not feel that Mr. Lane was frank and candid with the court. Under cross examination when inquiry was made of him as to his assets, earlier in the hearing he denied having or owning stocks other than Standard Oil Stock or Jersey Stock. After much cross examination and on the 4th day of the trial his complete financial holding finally came to light in the gross amount of some $35,-000.00 and in the net amount of some eight to nine thousand dollars. We believe that the husband by virtue of his training and education, which is that of a chemist, is an extremely exacting person. That he analizes everything in his daily life including his family the way you would a chemical formula. That is his training and we do not believe that he can act otherwise. We observed him through four days of hearing and we believe that he was himself. He was a very meticulous, very exacting and very definite in his opinion. Frankly, this is the way we believe he treated his family. We likewise do not believe that he was candid or honest with the court when he denied ever striking his wife. Now it *685 might be argued that he intended his answer to these questions with reference to the 9 months period but we have again reviewed the testimony and are certain that his answer to that question on 2 occasions was in the negative. On one occasion when his wife was struck in the mouth which required hospitalization. He claimed that to be an accident. On the second occasion the evidence is clear that he went into his wife’s bedroom and there while she was in bed with one of the daughters proceeded to strike and abuse her to the extent that he had to be removed from the room by his son and the door locked. This is corroborated by the testimony of his son and of his daughter. We find it interesting to note that when the trial date in this matter approached the daughter returned to her husband in Virginia, only to be later caught by the deposition. We have read her interrogatories, her answers to the interrogatories direct and cross and find that she has tried to be as fair to both as you can possibly be. The gist of her testimony was to the effect that her father did not do all within his power to make their home happy and comfortable. She corroborated her father’s testimony in many respects regarding his contribution to her and to her needs but she completely repudiated his testimony with respect to the care the mother kept of the house; the manner in which she prepared the food and who in fact took care of Mark. We think also indicative of the husband’s general attitude was the question of heat for the family home. There can be no doubt but the heat in the family home consisted of a fire place and an electric heater. The oldest — the second oldest boy testified that he never had heat in his room. The wife testified how on occasions it was necessary for them to put an electric heater under the table in her bedroom when she and her daughter prepared their lessons.
“Now enough for the father. The fault of the wife is that she really never forgave her husband for the physical abuse he undoubtedly heaped upon her on two previous occasions some years ago. That since the reconciliation some 8 years ago this couple has never really reconciled. There is no doubt in our mind that on a number of these occasions she in fact provoked the argument. There is no doubt in our mind also that she continually reminded her husband that she would eventually leave. She had stated that when the children were gone she would be not far behind. This is admitted by the plaintiff and by all parties concerned. * * *
“We believe that she was not ordered out of her house on June 16th as she stated in her petition. She had already elected to leave whereupon her husband told her if she was leaving to leave. We do not find that this is a case of either direct abandonment on the part of the wife or constructive abandonment on the part of the husband by ordering her to leave. It is noteworthy that she left home on the occasion the daughter Ruth had concluded plans to reside with a couple in Baton Rouge for the purpose of attending their infant daughter while going to L.S.U. in return for her room and board. To me this is also indicative of the marital discord in the family.
“Now we have pondered long and hard about this case and we have read and reread the testimony and we must come to the conclusion as to which fault outweighs the other if in fact it does. After very deliberate and careful consideration we find that the fault of the husband outweighs the fault of the wife; that his continual concern about finances, notwithstanding the fact that they were separate in property, and the manner in which the family finances were conducted continued right up to the time of the separation. He was earning gross $9,000.00 per year, that his wife was earning $100.00 per month or $1200.00 per year and out of which she furnished all of her clothes, a substantial portion of clothes for the child, Mark, her own transportation. This case would be easier to decide if there was anywhere in the record that the wife asked her husband for support and we frankly admit that she did not. It would be interesting to note whether he would have *686 complied. We doubt that because on one occasion he was asked if he would furnish his wife with a new car, his having- purchased a new one in 1962, and he said frankly no because she was of separate maintenance. I think that really indicates the financial arrangement of these parties and in particular the attitude of the plaintiff.”
While counsel for defendant has written an able and exhaustive brief, under the facts which we believe are fully supported by the record, the judgment of the lower court is correct.
Judgment affirmed.